**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Por M., | Case No. 26-cv-1546 (PJS/DJF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kristi Noem, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | |
| Respondents. | |

This matter is before the Court on Petitioner Por M.'s[1] Petition for Writ of Habeas Corpus (ECF No. 1) ("Petition"). Por seeks an order directing Respondents to release him immediately. As discussed below, the Court finds the government failed to follow its own regulations in detaining Por and recommends the Petition be granted on that ground.

**BACKGROUND**

Por is a member of the Hmong ethnic minority of Laos who entered the United States in 1989 as a refugee to escape persecution by the Laotian government due to his Hmong ethnicity. (ECF No. 1 at 1.) At that time, he just was 14 years old. (*Id*.) He later became a lawful permanent resident of the United Status, retroactive to his date of entry. (*Id*.) On September 28, 1999, Por was convicted in Minnesota state court of making felony terroristic threats. *See* Docket, *State of Minnesota v. Por M.*, No. 27-cr-99-030576 (Minn. Dist. Ct.). Because of this conviction, an immigration judge entered an order of removal against Por on October 31, 2000. (ECF No. 1 at 1; ECF No. 4-3 at 1.)

On February 20, 2001, Por filed a motion to reopen his removal, which an immigration judge denied on May 25, 2001. (ECF No. 4-4 at 3-4.) Following Por's release from incarceration on the criminal charge, Immigration and Naturalization Services ("INS")[2] took Por into custody but sometime later[3] released him from immigration custody on an order of supervision. (ECF No. 1 at 1-2.)

Given Por's Hmong status and Laotian citizenship, this was not unusual. The United States and Laos do not have a formal repatriation agreement. *See Viengkhone S. v. Albarran*, No. 25-cv-01505 (KES/HBK), 2025 WL 3521302, at *2 (E.D. Cal. Dec. 8, 2025). From the date of Por's initial order of removal until recently, Laos rarely accepted deportees, and its acceptance of Hmong deportees was especially rare. (ECF No. 1 at 1.) Very recently, Immigration and Customs Enforcement ("ICE") has had success obtaining travel documents for Hmong refugees from the Government of Laos, though precisely when that began is unclear. (*Id*. at 2; ECF No. 4-6 at 2.)

After his release, Por continued to violate the law. He was convicted of a litany of criminal offenses, including: a sex offense against a minor in 2002; felony failure to register as a predator offender in 2008; felony domestic assault, 3rd degree assault and 1st degree assault in 2010; and domestic assault in 2023. (ECF No. 1 at 9, listing cases.) Despite these convictions, ICE never asked Por to fill out applications for a passport or travel documents to facilitate his future return to Laos during his extended period of supervision. (*Id.* at 9.)

On December 10, 2025, ICE arrested Por at his home. (*Id.* at 2; ECF No. 4-6 at 2.) The legal justification for Por's arrest—at the time of his arrest—is unclear. Though Por denies being shown a

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in immigration matters.

[2] INS has been dissolved, and Immigration and Customs Enforcement performs its functions under the regulations at issue in this matter. *See Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 n.5 (D. Minn. Sept. 3, 2025).

[3] It is unclear from the record how long INS detained Por initially before his release on supervision.

warrant prior to his arrest (ECF No. 1 at 2; ECF No. 4-6 at 2), Respondents have produced an administrative warrant for his arrest dated December 10, 2025. (ECF No. 4-1.) It cites "reliable evidence" of removability as a basis for his arrest but omits any reference to his ongoing removal proceedings as grounds. (*Id*.) Respondents also produced a "Warrant of Removal/Deportation" dated December 10, 2025, which cites ongoing removal proceedings as grounds to arrest and remove Por. (ECF No. 4-2 at 1-2.) That document is not signed, however, and it is unclear whether the document was created before or after ICE arrested him. (*Id.*)

The record contains no evidence that Por ever received notice that his supervised release was being revoked or the reasons why. Por denies receiving notification from ICE that it was revoking his supervised release. (ECF No. 1 at 10.) And though Respondents claim in their briefing that ICE provided Por with a "Notice of Revocation of Release dated December 14, 2025" (ECF No. 4 at 7), they failed to attach any such notice to their response to the Petition (*see* Docket) and did not submit a sworn declaration certifying this claim is true (*see* ECF No. 4-6). Moreover, there is no information in the record—at all—to suggest Por was afforded an informal interview regarding the reasons for revocation.

On December 19, 2025, ICE requested a travel document for Por. (ECF No. 4-6 at 2.) The Laotian government issued the travel document on January 30, 2026. (*Id*.; ECF No. 4-7.) Respondents state that Por will be manifested on an upcoming charter flight, and that one such flight is scheduled to depart from Texas in mid-March. (ECF No. 4-6 at 2-3; ECF No. 4 at 6.) In the meantime, Por remains detained at the Freeborn County Jail in Albert Lea, Minnesota. (ECF No. 4-6 at 3.)

Por filed the Petition before the Court on February 20, 2026. (ECF No. 1.) The Petition requests an order for Por's immediate release based on Respondents' alleged violations of: (1.) 8

U.S.C. § 1231; (2.) Fifth Amendment substantive due process; (3.) Fifth Amendment procedural due process; (4.) the Fourth Amendment prohibition against unlawful search and seizure; and (5.) the *Accardi* doctrine.[4]  (*Id.* at 13-17.)

## DISCUSSION

### I.      Legal Standards

The general federal habeas statute empowers federal courts to release civilly-detained individuals when that detention violates the Constitution or federal law.  28 U.S.C. § 2241; *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025).  It is well-established that federal regulations are federal law.  *Resolution Trust Corp. v. Home Sav. of America*, 946 F.2d 93, 96 (8th Cir. 1991); *Velocity Express Corp. v. Bayview Capital Partners, LP*, No. 02-cv-521 (RHK/AJB), 2002 WL 980502, at *2 n.3 (D. Minn. May 9, 2002).  It therefore follows that a habeas petitioner may be released when his civil detention arises from violations of federal regulations.  *See In re United States*, 197 F.3d 310, 315 (8th Cir. 1999) (citing *United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)).

### II.     The Relevant Statutory and Regulatory Framework

Respondents argue Por's detention is authorized under 8 U.S.C. § 1231.  (ECF No. 4 at 3.) Section 1231(a)(2) provides that the government may detain a noncitizen who is subject to an order of removal. But the length of that detention is subject to various limitations.  With a few narrow exceptions not relevant here, a noncitizen's detention is limited to a 90-day "removal period."  *Id.* "The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of

---

[4] "[T]he *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights." *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001).

the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."[5] 8 U.S.C. § 1231(a)(3).

Since at least November 14, 2001, the Department of Justice and the Department of Homeland Security have maintained the same regulations concerning the procedures for revocation of supervised release under Section 1231(a)(3). *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56979 (Nov. 14, 2001) (codified at 8 C.F.R. § 241.13(i)). Those regulations state that revocation may occur for one of two reasons: (1.) a violation of conditions of release occurs; or (2.) "on account of changed circumstances," ICE determines there is a "a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i).

Importantly, the regulations establish not only the substantive grounds for revocation, but also the required procedure. If ICE decides to revoke a noncitizen's supervised release, the noncitizen "will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). Once the noncitizen is in custody, ICE must promptly conduct an "initial informal interview … to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit evidence or information that he or she believes shows there is no significant likelihood he or she be [sic] removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* ICE then must conduct a

---

[5] Because this language predates the Department of Homeland Security, courts now construe the statute's reference to the Attorney General as referring to the Secretary of the Department of Homeland Security as well. *See Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017).

revocation custody review that includes "an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

### III.   Analysis

Much of Respondent's argument focuses on the provisions of Section 1231 that prescribe initial detention of a noncitizen upon the entry of a removal order under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). "But *Zadvydas* does not apply to noncitizens subject to an order of supervision, where there has *already been* a determination that a noncitizen is not likely to be removed." *Tou V. v. Bondi*, No. 26-cv-1381 (DMG), 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026). Applicable here are Section 1231(a)(3), which explicitly differentiates supervised release from initial detention and delegates regulatory authority concerning supervised release to the Attorney General, and 8 C.F.R. 241.13, which regulates the conditions on which the government may revoke supervised release.

Respondents' detention of Por involves after-the-fact rationalizations for his release revocation that plainly violate the notice and interview requirements of 8 C.F.R. § 241.13. Though Por raises several independent grounds for his release, the Court concludes that the Petition ought to be granted because the government failed to follow its own regulations in detaining him.[6]

### A.   Improper Notice

The most glaring problem with Por's arrest and detention is that Respondents failed to provide him with a Notice of Revocation of Release at the time of his arrest and did not give him an informal interview within a reasonable period of time following his arrest. (ECF No. 1 at 10; ECF

---

[6] The Court thus does not consider the other grounds asserted in the Petition. *See Yee S. v. Bondi*, 806 F. Supp. 3d 894, 898 n.5 (D. Minn. Oct. 9, 2025).

No. 4-6 at 2.)  In fact, Respondents have not provided Por with any formal notice of revocation or informal interview whatsoever.  (*Id.*)  The Court cannot credit Respondents' unsubstantiated claim that they provided him with Notice of Revocation of Release on December 14, 2025 because they failed to support it with any evidence.[7]  The Court ordered Respondents to include with their response "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of petitioner's detention in light of the issues raised in the habeas petition."  (ECF No. 3 at 1.)  Respondents are plainly aware of the critical importance of serving a Notice of Revocation of Release and ensuring its contents provided adequate notice in cases such as this one.  *See, e.g., Si T.P. v. Noem*, No. 26-cv-1445 (ECT/DJF), ECF No. 9 (D. Minn. Feb. 24, 2026)(finding Notice of Revocation inadequate because it referred to "changed circumstances" without explaining how circumstances had changed), *report and recommendation adopted*, *Si T.P. v. Noem*, No. 26-cv-1445 (ECT/DJF), ECF No. 11 (D. Minn. Mar. 3, 2026).  That they failed to produce a Notice of Revocation strongly suggests either that none exists or that any notice given was so inadequate as to be entirely unhelpful to Respondents' case.

Respondents did file a Form I-200 Warrant of Arrest ("Warrant"), along with a declaration confirming that ICE served Por with the Warrant at the time of his arrest.  (ECF No. 4-6 at 2; ECF No. 4-1.)  But the Warrant alone is not sufficient to have put Por on notice of: (1.) the fact that his supervised release was being revoked; (2.) the reasons for the revocation, including an explanation of how he had violated his release conditions or how circumstances had changed; or (3.) his entitlement to an informal interview and an opportunity to respond to the reasons for the revocation.

---

[7] Even if Respondents had served Por with a Notice of Revocation on December 14, 2025, such notice would not establish that his supervised release was revoked *before* his arrest on December 10.  *See M.S.L. v. Bostock*, No. 6:25-cv-1204 (AA), 2025 WL 2430267, at *10, 12 (D. Or. Aug. 21, 2025) (concluding two-day delay between arrest and service of notice of revocation violated federal regulations).

*C.f. Si T.P.*, No. 26-cv-1445, ECF No. 9 (citing Notice of Revocation of Release at ECF No. 6-2). Indeed, to the extent Respondents now claim the removal proceedings against Por justified his arrest, the Warrant was misleading because it notably omitted "removal proceedings" as a basis for it. (ECF No. 4-1.) Respondents offer no justification for arresting Por and continuing to detain him without formal notice of why they were revoking his supervised release.

Respondents' failure to provide notice of the reasons for revocation is a significant omission because it prevented Por from challenging the revocation. Respondents' regulations dictate that a detainee must be apprised of the specific reasons for revoking his supervised release so that he can present rebuttal evidence and argument at an informal interview. 8 C.F.R. § 241.13(i)(3); *see also Sarail A.*, 803 F. Supp. 3d at 781 ("notification 'of the reasons for revocation' requires ICE to do more than state that circumstances have changed."). Here, Respondents do not even imply that they provided Por with the required interview. Respondents' failure to follow their own regulations in arresting and detaining Por deprived him of an opportunity to mount a defense, and that deprivation establishes grounds to release him. *See Sarail A.*, 803 F. Supp. 3d at 781-84 (granting habeas petition based, in part, on government's failure to provide adequate notice of the reasons for revocation); *Dusan C. v. Bondi*, No. 26-cv-620 (JRT/ECW), 2026 WL 458128, at *4 (D. Minn. Feb. 13, 2026) (same); *Xayakesone v. Noem*, No. 25-cv-2995 (JES/BJW), 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (same).

**B.   Grounds for Revocation**

Respondents also have not established they had grounds to revoke Por's release when they arrested him. Respondents argue revocation of Por's supervision was appropriate given "changed circumstances," due to an increase in repatriations to Laos. (ECF No. 4 at 5-6.) It is Respondents' burden to establish that changed circumstances warrant the revocation of Por's release. *See Yee S. v.*

8

*Bondi*, No. 25-cv-02782 (JMB), 2025 WL 2879479, at *4 (D. Minn. Oct. 9, 2025) ("section 241.13 regulations place the burden on ICE to establish that 'changed circumstances' justified the revocation of release.") (collecting cases).  Under the regulations, a revocation of release must be grounded in more than generalized assertions that removal is now likely.  *See id*. at *5 (finding the Government's "vague and conclusory assertions" that removal was significantly likely soon are insufficient evidence of changed circumstances); *see also Vu v. Noem*, No. 25-cv-01366, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025) (same).  Section 241.13 requires ICE to consider several factors in assessing the likelihood of removal, including:

> [T]he history of the alien's efforts to comply with the order of removal, the history of [ICE]'s efforts to remove aliens to the country in question or to third countries, including the ongoing nature of [ICE]'s efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

Respondents argue that, when Por's release was revoked[8], changes in the Laotian government's repatriation policies constituted "changed circumstances" sufficient to justify it. (ECF No. 4 at 9.)  Due to this change, Respondents argue, "ICE personnel determined that they would be able to remove Petitioner from the United States because Laos is accepting individuals for repatriation." (*Id*.)

Respondents proffer no evidence showing an uptick in successful removals to Laos when Por was arrested on December 10, 2025, however.  They rely on the travel document Respondents obtained for Por's removal to Laos (ECF No. 4-7).  But ICE did not apply for the travel document

---

[8] This argument begs the question of exactly when Por's release was revoked, since Respondents never produced any formal Notice of Revocation.  Since Por was arrested and detained on December 10, 2025, the Court deems his arrest a de facto revocation on that date.

until December 19, 2025, nine days after Por's arrest, and did not receive it until January 30, 2026—almost two months later. (*Id*.; *see also* ECF No. 4-6 at 2-3.) Respondents also cite the Declaration of Deportation Officer William J. Robinson, which states that Por "will be manifested on an upcoming scheduled charter flight" to Laos. (ECF No. 4-6 at 3.) These documents would appear to support an argument that circumstances have *now* changed. But the Court is unconvinced by the paucity of evidence pre-dating December 10 that a likelihood of Por's successful deportation to Laos existed *before* he was arrested. *See Moussa S., v. Bondi*, No. 26-cv-1408 (PJS/ECW), 2026 WL 622680, at *1 (D. Minn. Mar. 5, 2026) (order adopting report and recommendation recommending release) ("under § 241.13(i)(2), ICE must determine that changed circumstances exist *before* re-detaining an alien").

Nor is the Court convinced that a change in the Laotian government's repatriation policy was the actual reason for Por's arrest. As previously discussed, Por still has not received a formal Notice of Revocation, and neither the arrest Warrant nor any of the other immigration documents Respondents prepared at the time of his arrest identified an increase in successful deportations to Laos as grounds. Officer Robinson states that ICE executed a "targeted arrest" on Por. (ECF No. 4-6 at 2.) But Officer Robinson does not actually state what "targeted" means or why Por was "targeted." The Court cannot conclude from this vague statement that officials targeted him because he was subject to an order of removal and officials believed his imminent deportation was likely.

Courts in this District have repeatedly rejected the government's attempts to rely on ex-post facto justifications for revocation in circumstances nearly identical to Por's. *See Tou V.*, 2026 WL 458195, at *3 (finding respondents could not rely on a post-detention change in circumstances, including receipt of Laotian travel document, to justify release revocation) ("The government detained the petitioner first, and asked questions later. That's not how this works."); *Yeng X. v.*

10

*Noem*, No. 26-cv-1399 (DMG), 2026 WL 465220, at *1 (D. Minn. Feb. 18, 2026) (same); *Chou T. v. Noem*, No. 26-cv-01432 (SHL/ECW), 2026 WL 607413, at *6 (D. Minn. Feb. 20, 2026) (same), *report and recommendation adopted sub nom.*, *Chou T. v. Noem*, No. 26-cv-01432 (SHL/ECW), 2026 WL 613575 (D. Minn. Mar. 4, 2026).  Respondents had the burden to establish changed circumstances before Por was detained, and the Court concludes they have failed to carry that burden.

## C.    Remedy

Respondents argue that "[i]f the Court concludes that ICE's re-detention procedures were deficient, then the solution is for the agency to redo the process and correct any deficiencies—not release Petitioner from detention outright." (ECF No. 4 at 8.)  But Respondents cite to no case law to support this proposition.  Release here is the proper relief.  *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").  Courts in this District have repeatedly found that the government's failure to follow its own requirements under Section 241.13 warrants release, not a "re-do" of Section 241.13 procedures.  *See Tou V.*, 2026 WL 458195, at *4 ("But the government's custody of a person without regard for its own regulations is an unlawful detention indeed."); *Yeng X.*, 2026 WL 465220, at *1; *Chou T.*, 2026 WL 607413, at *6 (report and recommendation adopted); *Garrison G. v. Bondi*, No. 26-cv-172 (JMB/DJF), 2026 WL 157677, at *4 (D. Minn. Jan. 17, 2026); *Jor Y. v. Noem*, No. 26-cv-1210 (JMB), ECF No. 6 at 7 (D. Minn. Feb. 11, 2026); *Tong X. v. Noem*, No. 26-cv-1548 (JMB), ECF No. 6 at 7–8 (D. Minn. Feb. 23, 2026); *Si T.P.*, No. 26-cv-1445, ECF No. 9 at 11 (report and recommendation adopted); *Mong C. v. Noem*, No. 26-cv-1541 (JWB), ECF No. 7 at 6 (D. Minn. Feb. 24, 2026).

In their apparent rush to arrest and detain Por, Respondents violated their own legally dictated procedures.  Though there might now be legitimate grounds to revoke Por's supervised

11

release, the Court cannot draw a firm conclusion because the administrative process failed. Had he been given proper notice and an opportunity for an informal interview, Por might have submitted evidence refuting the government's claim that circumstances have changed, and a revocation custody review might find continued supervision is warranted. But to sanction Por's continued unlawful detention under procedures provided three months too late would render the procedural safeguards set forth in the regulations meaningless. Respondents must adhere to the regulations they established. The Court therefore recommends that the Petition be granted.

## V.       Objections

Given the expedited nature of these proceedings, the Court is altering the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **March 11, 2026**. Por may file a response to any objections on or before **March 12, 2026**.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.       Petitioner Por M.'s *Petition for Writ of Habeas Corpus* (ECF No. 1) be **GRANTED.**

2.       Respondents be ordered to release Petitioner Por M. from custody:

     A.       As soon as practicable;

     B.       Inside the State of Minnesota;

     C.       At a safe time and place communicated in advance to counsel; and

D.       With **_all_** of Petitioner's personal effects in Respondents' possession, such as

driver's license, immigration papers, passport, cell phone, and keys.

Dated: March 9, 2026                              *s/ Dulce J. Foster*

Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before March 11, 2026. Petitioner may file a response to any objections on or before March 12, 2026.

13